IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Robert Edgar Upchurch, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 7:10-cv-1819-JMC-JDA |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Philip C. Wilkie, individually and in his ) | |
| official capacity, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on Defendant's motion for summary judgment. [Doc. 53.] Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on July 14, 2010, generally alleging constitutional violations including unlawful seizure, malicious prosecution, false arrest, false imprisonment, and a denial of due process. [Doc. 1 at 2.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and to submit findings and recommendations to the District Court.

## BACKGROUND[1]

On January 21, 2009, Sergeant Kennedy ("Kennedy")[2] stopped Plaintiff for driving with an expired tag. In his report of the incident, Kennedy stated that he observed a passenger in the car throw a glass pipe out of the car window. Defendant, a narcotics officer, came to back up Kennedy, retrieved the glass pipe, and observed a white rock-like substance in the pipe. Subsequently, Plaintiff and his passenger were arrested for possession of a Schedule I to V narcotic without Defendant performing a field test on the substance. Plaintiff's bond was set at $5,000, secured, and Plaintiff demanded a preliminary hearing.

On January 24, 2009, Plaintiff posted bond and was released. Plaintiff's preliminary hearing was held on April 9, 2009. At the hearing, Plaintiff learned that he had been indicted on March 5, 2009. On February 8, 2010, Plaintiff received a copy of the State's evidence, but in the evidence, there was no State Law Enforcement Division ("SLED") drug analysis test of the white rock-like substance or evidence of a field test performed before Plaintiff was arrested and charged.

On May 27, 2010, at a hearing regarding an unrelated matter, Plaintiff complained that in the sixteen months since his arrest, he had yet to see the results of a drug analysis of the white rock-like substance, and he wanted to know what evidence was presented to the grand jury to indict him. After the hearing, Plaintiff's attorney[3] showed Plaintiff the

---

[1] The following background, forming the basis of Plaintiff's claims, is a summary of Plaintiff's allegations contained in the Complaint, Docket Entry 1.

[2] Kennedy is not a party to this action.

[3] Plaintiff was apparently represented during the underlying state criminal charges. [See Doc. 1-2 at 7.] As previously stated, Plaintiff is proceeding pro se before this Court.

results of a SLED drug analysis test on the substance. According to Plaintiff, the Assistant Solicitor[4] had the test results since December 16, 2009, and SLED received the test results on June 24, 2009.

On June 15, 2010, Plaintiff's attorney filed a motion for a fast and speedy trial. On June 28, 2010, Plaintiff's attorney sent Plaintiff notice that the charge—possession of a Schedule I to V narcotic—had been dismissed.

Plaintiff contends Defendant should have field tested the white rock-like substance before arresting and charging Plaintiff with possession of a Schedule I to V narcotic. Plaintiff further contends that as a result of the alleged constitutional violations, he spent three days in jail and spent money to make bond, which caused his marital and family relations to suffer. Plaintiff also contends he suffered embarrassment, stress, and loss of liberty. Plaintiff seeks compensatory damages in the amount of $30,000; punitive damages in the amount of $50,000; a jury trial; costs; general damages in the amount of $50,000; and any additional relief the Court deems just, proper, and equitable.

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent

---

[4] Plaintiff filed this action against Defendant and Assistant Solicitor Michael Morin. [Doc. 1.] However, Assistant Solicitor Morin was summarily dismissed and was never served. [Doc. 28.]

standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and

laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A

5

determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION[5]

**Unlawful Seizure, Malicious Prosecution, False Arrest, and False Imprisonment Claims**

Plaintiff alleges Defendant's actions constituted unlawful seizure, malicious prosecution, false arrest, and false imprisonment and, therefore, violated Plaintiff's constitutional rights because Defendant did not field test the white rock-like substance before he arrested and charged Plaintiff. Liberally construing Plaintiff's allegations, the Court finds Plaintiff contends that without field testing the substance, Defendant lacked probable cause to arrest Plaintiff. The Court disagrees.

Section 1983 actions premised on alleged unlawful seizure, malicious prosecution, false arrest, and/or false imprisonment are analyzed as actions claiming unreasonable

---

[5] Plaintiff raises claims of negligent abuse of authority and gross negligence in his response to Defendant's motion for summary judgment. [Doc. 85-1 at 7.] These claims were not properly brought because they may not be raised for the first time in response to a motion. The Rules of Civil Procedure set a liberal standard of notice pleading. Fed. R. Civ. P. 8. Notice pleading rests on the principle that the defendants should have fair notice of the plaintiff's claim and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Here, Plaintiff did not request to amend the Complaint, and Defendant did not have fair notice of these claims because they were raised in response to Defendant's motion. Further, while the Court is required to liberally construe Plaintiff's pleadings, *see, e.g.*, *Estelle*, 429 U.S. at 106, the Court cannot "'assume the role of advocate for the pro se litigant,'" *Barnett*, 174 F.3d at 1133 (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and construct Plaintiff's case for him, *see Small*, 998 F.2d at 417–18. Therefore, because Plaintiff raised these claims in response to Defendant's motion for summary judgment, Plaintiff's claims of negligent abuse of authority and gross negligence were not properly before the Court, and the Court is not required to consider these claims.

Even if the Court were to address these claims, they would fail as a matter of law. Plaintiff alleges Defendant abused his authority and was grossly negligent in arresting Plaintiff for possession of cocaine because Kenney saw only Plaintiff's passenger throw the glass pipe out of the window. [Doc. 85-1 at .] However, gross negligence is not actionable under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328–36 & n.3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345–48 (1986); *Pink v. Lester*, 52 F.3d 73 (4th Cir. 1995); *Ruefly v. Landon*, 825 F.2d 792, 793–94 (4th Cir. 1987). Negligence is a cause of action under state law, and § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Dep't of Soc. Svcs.*, 489 U.S. 189, 200–03 (1989). Moreover, § 1983 was intended to remedy intentional deprivations of constitutional rights; therefore, a plaintiff claiming a state official harmed the plaintiff through an abuse of authority must show an affirmative abuse of power. *See Daniels*, 474 U.S. at 331–33; *Davidson*, 474 U.S. at 347–48. Plaintiff has failed to allege facts to support a finding that Defendant affirmatively abused his power. Consequently, even if Plaintiff's claims of negligent abuse of authority and gross negligence were properly before the Court, these claims would fail.

seizures in violation of the Fourth Amendment. *See, e.g.*, *Brown v. Gilmore*, 278 F.3d 362, 367–68 (4th Cir. 2002) (analyzing the plaintiff's allegations of false arrest as a claim of unreasonable seizure under the Fourth Amendment); *Rogers v. Pendleton*, 249 F.3d 279, 294 (4th Cir. 2001) (stating that claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment"); *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) ("[T]here is no such thing as a '§ 1983 malicious prosecution' claim. What we termed a 'malicious prosecution' claim . . . is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff.").

The Fourth Amendment proscribes "unreasonable searches and seizures."[6] U.S. Const. amend. IV. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (citation, quotation, and emphasis omitted); *see also Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (citation omitted) ("[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief."); *Berkemer v. McCarty*, 468 U.S. 420, 436–37 (1984) (same); *Colorado v. Bannister*, 449 U.S. 1, 4 n.3

---

[6] The Fourth Amendment's proscriptions are applicable to the States through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961).

(1980) (per curiam) (same).  Seizures are "reasonable" only if based on probable cause. *Dunaway v. New York*, 442 U.S. 200, 214 (1979).

The test to determine whether probable cause existed for a seizure is an objective one, based on the totality of the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983); *see also Mazuz v. Maryland*, 442 F.3d 217, 224 (4th Cir. 2006) (citing *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985)) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken.").[7]  Specifically, the totality of the circumstances includes "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information," *Beck v. Ohio*, 379 U.S. 89, 96 (1964), and such facts and circumstances constitute probable cause if they are "sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense," *id.*

Here, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant lacked probable cause for Plaintiff's arrest.  In an incident report drafted by Defendant, he stated that when Kennedy turned on his blue lights to stop Plaintiff for driving with expired tags, Kennedy observed Plaintiff's passenger throw a glass

---

[7] Plaintiff does not present a claim based on a lack of probable cause for Kennedy to initiate a traffic stop. [*See* Doc. 1.] However, because the events leading to Plaintiff's arrest were precipitated by Kennedy's instigation of a traffic stop, the Court notes the law relevant to probable cause for traffic stops. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).  Thus, even minor traffic violations give officers justification to conduct a traffic stop. *Wallace v. Johnston*, 2007 WL 1068477, at *4 (D.S.C. Mar. 30, 2007) (citing *Whren*, 517 U.S. at 810).  Therefore, traffic violations constitute probable cause for traffic stops, which are Fourth Amendment seizures.

10

pipe out of the passenger side window. [Doc. 53-3 at 1; *see also* Doc. 1-2 at 3.] When Defendant arrived on the scene, Kennedy pointed out to Defendant the glass pipe. [Doc. 53-3 at 1; *see also* Doc. 1-2 at 3.] Defendant retrieved the glass pipe and noticed that the glass pipe was charred and contained a white rock-like substance. [Doc. 53-3 at 1; *see also* Doc. 1-2 at 3.] When he retrieved the glass pipe, Defendant believed the white substance to be an illegal substance, likely crack. [Doc. 53-2 ¶ 8.] Defendant averred that, in his experience as a police officer, he has become familiar with the characteristics of illegal substances and has become able to identify their likely classification by observation. [*Id.*]

According to the incident report, after Plaintiff and his passenger were read their Miranda rights and verbally acknowledged they understood their rights, they were questioned about the pipe and rock-like substance. [Doc. 53-3 at 1; *see also* Doc. 1-2 at 3.] Both denied ownership, although the passenger stated that he was showing Plaintiff where to purchase crack cocaine. [Doc. 53-3 at 1–2.] Both the Plaintiff and his passenger were arrested for possession of crack cocaine and Plaintiff was also charged with driving without a license and with an expired tag. [*Id.* at 2.] The substance was later tested and confirmed to be a cocaine base. [*Id.* ¶ 7; Doc. 1-2 at 6; Doc. 53-5.]

In response, Plaintiff argues that there was no probable cause to arrest him because (1) Kennedy saw Plaintiff's passenger, not Plaintiff, throw the glass pipe out of the window and (2) the charges were later dropped against Plaintiff. [Doc. 85-1 at 5.] However, Plaintiff's arguments fail to demonstrate that there is a genuine issue of material fact as to whether Defendant had probable cause to arrest Plaintiff. In *Maryland v. Pringle*,

the Supreme Court upheld a finding of probable cause to arrest a car's front-seat passenger for possession of cocaine found under the back-seat armrest. 540 U.S. 366 (2003).[8] The Supreme Court found it was reasonable for the officer to infer a common enterprise among the three men given the quantity of drugs and cash in the car. *Id.* at 373 (discussing *Wyoming v. Houghton*, where the Court stated that "a car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing," 526 U.S. 295, 304–05 (1999)). Further, the Court noted that "'[a]ny inference that everyone on the scene of a crime is a party to it must disappear if [one] singles out the guilty person,'" but no such singling out had occurred among the car's passengers. *Id.* at 374 (quoting *United States v. Di Re*, 332 U.S. 581, 594 (1948)). Plaintiff and his passenger denied any knowledge of the drugs. [Doc. 53-3 at 1–2.] Kennedy observed a glass pipe thrown from the car both Plaintiff and his passenger occupied [Doc. 53-3 at 1; Doc. 1-2 at 3], and Plaintiff's passenger indicated that at the time of the stop, he was in the car with Plaintiff to show Plaintiff where to buy drugs [Doc. 53-3 at 2]. Therefore, in the absence of any singling out, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact as to whether it was reasonable for Defendant to conclude Plaintiff and his passenger were engaged in a common enterprise such that both should be arrested for possession of a Schedule I to V narcotic.

---

[8] In *Pringle*, the front-seat passenger was one of three men in the car, including the driver. *Id.* at 368. After stopping the car for speeding, the officer observed a large amount of rolled-up money in the car's glove compartment. *Id.* The officer issued the driver an oral warning, and asked the driver if the driver had any weapons or narcotics in the car, which the driver denied. *Id.* The driver then consented to a search of the car, which "yielded $763 from the glove compartment and five plastic glassine baggies containing cocaine from behind the back-seat armrest." *Id.* None of the three men offered any information regarding the ownership of the money or drugs, and all three were arrested. *Id.*

Additionally, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). Moreover, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Further, the probable cause standard is lower than the standard to convict—probable cause requires only "'a reasonable ground for belief of guilt,'" *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (quoting *McCarthy v. De Armit*, 99 Pa. 63, 69 (1881)), but to convict a defendant, the State must prove the defendant's guilt beyond a reasonable doubt, *see, e.g.*, *United States v. Booker*, 543 U.S. 220, 230 (2005) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). Therefore, the fact that Plaintiff's charges were dropped does not mean that Defendant did not have probable cause to arrest him.

Consequently, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact as to whether the totality of the circumstances indicated there was probable cause to arrest Plaintiff for possession of a Schedule I to V narcotic. Therefore, the Court recommends that Defendant's motion for summary judgment be granted as to Plaintiff's claims of unlawful seizure, malicious prosecution, false arrest, and false imprisonment.

**Due Process Claim**

The Fourteenth Amendment to the United States Constitution provides in part that no State may "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. The Supreme Court has recognized there are three types of

claims that may be brought in a § 1983 action alleging violations of the Due Process Clause:

> First, the Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, e.g., freedom of speech or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken. A plaintiff, under *Monroe v. Pape*, may invoke § 1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights.
>
> The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies is relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal citations omitted).

It is not clear from Plaintiff's allegations what type of due process violation Plaintiff is alleging. Defendant argues Plaintiff neither alleges nor presents any evidence that he was denied any of these due process protections. [Doc. 53-1 at 10.] And while Plaintiff lists "due process" as a claim he is attempting to raise in this litigation [Doc. 1 at 2], he does not provide the Court with any guidance a to how he was denied due process. Although the Court must liberally construe Plaintiff's pro se complaint, Plaintiff must do

more to support his claims than make conclusory statements. *See Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994) (affirming the district court's dismissal of the plaintiff's suit as frivolous where the plaintiff's allegations were conclusory and the complaint was nonsensical on its face); *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (concluding the district court did not abuse its discretion in dismissing the pro se complaint when the complaint failed to contain any factual allegations to support the plaintiff's bare assertions). Accordingly, the Court finds Plaintiff's allegations under the Due Process Clause fail as a matter of law and recommends Defendant's motion for summary judgment be granted as this claim.

**Qualified Immunity**

Defendant argues he is entitled to qualified immunity because his conduct did not violate any clearly-established rights of which a reasonable government official would have known. The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.*

A court "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was

clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)).  Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id.*  If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).  As discussed above, Plaintiff's allegations fail to demonstrate that Defendant violated Plaintiff's constitutional rights.  Therefore, Defendant is entitled to qualified immunity.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment [Doc. 53] be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 29, 2011
Greenville, South Carolina